775 P.2d 1243

**Lavern G. DAVIS, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 17346.**

Court of Appeals of Idaho.

May 31, 1989.

Petition for Review Dismissed July 25, 1989.

Lance D. Churchill, Churchill & Vander Boegh, Boise, for appellant.

Jim Jones, Atty. Gen., David R. Minert and Eric E. Nelson, Deputy Attys. Gen. (argued), Boise, for respondent.

WALTERS, Chief Judge.

This is an appeal under the post-conviction procedure act, I.C. § 19-4901 et seq. In his application, Lavern Davis alleged that he had been deprived of effective assistance of counsel at his trial for possession of controlled substances and drug paraphernalia. After an evidentiary hearing, the district court concluded Davis was not entitled to any relief and denied the application. We affirm.

The following background is pertinent to this appeal. In January, 1984, Davis' ex-wife, Judy, informed the Wendell Police Department that Davis had marijuana at his home. Based upon this information, a magistrate issued a warrant to search Davis' residence. At the time the police executed the warrant, Davis was not at home but another man—Terrel Carmichael—was found by police at Davis' residence. The police removed Carmichael from the premises and proceeded with their search. They found quantities of marijuana and drug paraphernalia in the house. Shortly thereafter, Davis was arrested at the home of Ms. Davis.

After arraignment, the district court appointed counsel for Davis. Although the attorney appointed to represent Davis had previously handled criminal cases, this appointment resulted in the attorney's first trial of a felony. During Davis' trial, the state called as witnesses Ms. Davis and various law enforcement officials involved in Davis' arrest and in the search of his home. Davis' attorney called no witnesses, even though both Carmichael and Ms. Davis were subpoenaed to appear as defense witnesses at trial. Rather, the attorney relied on a defense that the state had failed to prove that Davis was in possession of the drugs and drug paraphernalia in his home at the time of his arrest. The jury found Davis guilty as charged and also found him to be a persistent violator. I.C. § 19-2514. In August, 1984, Davis received a thirty-year indeterminate sentence. After his sentencing hearing, Davis was immediately transferred to the Idaho State Correctional Institution. Approximately ten days after Davis' sentencing hearing, his attorney wrote a letter to Davis at the penitentiary stating that he, the attorney, believed that Davis' case presented no issues for appeal. Davis did not file an appeal from his judgment of conviction.

Davis obtained new counsel in 1986, and filed his application for post-conviction relief in the present case, alleging that Davis' former attorney had failed to render effective assistance of counsel during the investigation phase of Davis' case, during Davis' trial, and by failing to file a timely appeal from Davis' judgment of conviction. After an evidentiary hearing, the district court denied relief on Davis' application. This appeal followed.

Davis raises the following issues. First, he contends that the district court erred by failing to enter findings of fact and conclusions of law sufficient to support a denial of his application for post-conviction relief. Second, he submits that, contrary to the district court's decision, he was not provided effective assistance of counsel at trial.

Specifically, he maintains: (a) that his attorney failed to file a timely motion to suppress evidence; (b) that his attorney failed to properly investigate the state's case or to interview any of the state's witnesses; (c) that his attorney failed to object to irrelevant and prejudicial evidence at trial; (d) that his attorney failed to present a defense in his behalf; (e) that his attorney failed to object to the court's jury instructions; and (f) that his attorney failed to appeal the judgment.

## I

### THE DISTRICT COURT'S WRITTEN DECISION

Davis first argues that the district court's written decision failed to satisfy the statutory requirement that the court make specific findings of fact and conclusions of law relating to each of the issues presented by the accused on an application for post-conviction relief. *See* I.C. § 19–4907(a). The district court's decision rejected each of Davis' claims, stating—without elaborating—either that Davis had failed to adduce evidence of his trial attorney's alleged deficiencies, that the trial attorney's conduct was not ineffective, or that the trial attorney's acts were to be construed as "tactical trial decisions," and would not be second-guessed on review.[1]

Davis submits that the court's perfunctory treatment of his claims has severely hampered his presentation of issues on appeal. Specifically, he contends that it is impossible to determine whether the court based its denial of his application on correct standards of law, or to determine whether his trial attorney's acts were within the bounds of proper professional conduct.

Proceedings under the post-conviction procedure act contemplate the receipt of pleadings and evidence by the parties, followed by the district court's decision based upon findings of fact and conclusions of law. *See State v. Morris,* 101 Idaho 120, 609 P.2d 652 (1980). I.C. § 4907(a) provides that "[t]he court shall make *specific* findings of fact, and state *expressly* its conclusions of law, relating to *each issue presented.*" [Emphasis supplied.] The purpose behind these requirements is to afford the appellate court an adequate basis upon which to assess any appeal arising from the denial of an application for post-conviction relief. *Maxfield v. State,* 108 Idaho 493, 700 P.2d 115 (Ct.App.1985). Failure to provide such a record can result in reversal of the district court's denial of the application. *See State v. Morris, supra.* However, the failure of a district court to make specific findings of fact or to state its conclusions of law upon denial of a petitioner's post-conviction claim does not necessarily require reversal. *Maxfield v. State, supra.* The absence of such findings of fact or conclusions of law can be disregarded, but only if the record is clear and yields an obvious answer to the relevant questions raised on appeal. *Id.* Our review of the district court's written decision reveals that it does not thoroughly address each of Davis' post-conviction claims. However, based upon our examination of the record, including the trial transcript, the transcript of the evidentiary

---

1. The district court's decision recites:

    As to the issue of failure of Petitioner's attorney to timely file [a] Notice of Appeal, this Court finds that Petitioner's attorney sent him a letter and advised against an appeal, but left to the Petitioner the final decision and that the Petitioner failed to respond. [T]he Petitioner did not desire an appeal and his attorney in good conscious [sic] did not file a frivilous [sic] appeal.

    Considering issue II(a) above, the evidence presented does not establish that Petitioner's attorney was not adequately familiar with the law as it then existed. To the contrary, the evidence demonstrated that Petitioner's attorney was familiar with the then existing law.

    Issues II(b) and (d) were not supported by any evidence presented at the hearing. Petitioner's attorney made certain tactical trial decisions and this Court will not now substitute different tactical decisions.

    In the last issue, Petitioner complains that his attorney failed to properly object to the admission of certain evidence. Again, these were tactical trial decisions which this Court cannot second guess.

    Therefore, this Court finds that the Petitioner has not prevailed in his burden of proof on any of the issues presented in his petition and the Petition is DENIED.

hearing on Davis' post-conviction application, and the exhibits provided to us on appeal, we conclude that the district court properly denied Davis' application. Because our holding on this issue is based upon our review of each of Davis' claims, we will incorporate our discussion of these issues into the next part of our opinion, setting forth our reasons for affirming the district court's decision.

## II

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

■ With respect to Davis' specific claims of ineffective assistance of counsel, we preliminarily note our standard of review. The accused in a criminal trial is guaranteed effective assistance of counsel based upon the sixth amendment to the United States Constitution, and Article I, § 13 of the Idaho Constitution. *Aragon v. State,* 114 Idaho 758, 760 P.2d 1174 (1988). To prevail on an ineffective assistance of counsel claim, the applicant must show that his attorney's performance was deficient, and that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State, supra; Young v. State,* 115 Idaho 52, 764 P.2d 129 (Ct.App.1988). To establish a deficiency, the applicant has the burden of showing that his attorney's representation fell below an objective standard of reasonableness. *State v. Aragon,* 114 Idaho at 760, 760 P.2d at 1176. To establish prejudice, the applicant must show a reasonable probability that, but for his attorney's deficient performance, the outcome of his trial would have been different. *Id.*

■ The applicant bears a heavy burden in proving that his attorney's performance was deficient. Because of the distorting effects of hindsight in reconstructing the circumstances of counsel's challenged conduct, there is a strong presumption that counsel's performance was within the wide range of reasonable professional assistance—that is, "sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689,

104 S.Ct. at 2065. Therefore, strategic or tactical decisions made by trial counsel will not be second-guessed on review, unless those decisions are made upon a basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *State v. Larkin,* 102 Idaho 231, 628 P.2d 1065 (1981), *post-conviction proceeding, Larkin v. State,* 115 Idaho 72, 764 P.2d 439 (Ct.App. 1988). Both the deficient performance and prejudice components of this standard are mixed questions of law and fact. *Young v. State, supra.* On appeal of an ineffective assistance of counsel claim, we will defer to the facts found upon substantial evidence by the trial court, but we will freely review application of the law to the facts thus found. *Id.*

In the instant case, Davis contends that, due to his attorney's lack of preparation, ignorance of the law, and failure to present a timely defense to his case at trial and on appeal, this Court should ignore the presumption favoring the attorney's performance and find that he did not render effective assistance of counsel. Because Davis has asserted several specific instances of attorney misconduct, we will address each of these allegations in turn.

### A. Failure to File a Timely Motion to Suppress.

■ Davis initially contends that his attorney failed to file a timely suppression motion with the district court regarding evidence seized during the search of Davis' home, and during the search of an automobile (evidently owned by Ms. Davis) he was driving immediately prior to the time of his arrest. I.C.R. 12(d). Davis argues that his attorney's failure to file the suppression motion within the time allotted by Rule 12 was evidence of the attorney's deficient performance. Davis further contends that had his attorney filed the motion on time, the evidence seized at Davis' home and in the automobile he was driving would have been excluded, therefore eliminating the state's case against him.

We disagree. Even if we assume, without deciding, that the attorney was defi-

cient in failing to file a timely pretrial suppression motion, Davis has not proven resulting prejudice. At the hearing on his application, Davis did not show that the items seized during these searches were suppressible under a timely motion. *See Maxfield v. State*, 108 Idaho at 501, 700 P.2d at 123 (failure to file a timely suppression motion not ineffective assistance of counsel because motion would not have succeeded before the magistrate or district court). The record reveals that the search warrant for Davis' home was issued by a magistrate upon information provided to police by Ms. Davis regarding Davis' possession and trafficking of marijuana in his home. The record does not reflect—nor can we ascertain any independent reason— why the warrant would not have been issued based upon the totality of circumstances existing at that time. *State v. Forshaw*, 112 Idaho 162, 730 P.2d 1082 (Ct.App.1986). We also note that the search of Ms. Davis' automobile was conducted after Davis' arrest, with Ms. Davis' consent. Given these circumstances, it appears highly unlikely that, had the attorney made a timely suppression motion, the motion would have been granted. We therefore hold that Davis did not establish that he was denied effective assistance of counsel by his attorney's failure to file a timely suppression motion.

### B. Failure to Investigate or Interview Witnesses.

Next, Davis contends that his attorney failed to properly investigate the state's case. Specifically, Davis argues that, prior to trial, his attorney failed to familiarize himself with the pertinent law. Davis also claims that his attorney failed to interview Ms. Davis and, as a result, he was not able to effectively cross-examine her at trial. Davis further submits that his attorney's failure to interview Terrel Carmichael—the man found at Davis' home at the time the search warrant was executed—made it impossible for the attorney to conclude that Carmichael should not be called as a witness at trial. Finally, Davis asserts that his attorney spent less than one hour with him in preparation for trial. Davis argues

that, taken together, his attorney's lack of knowledge of the law relevant to his case and the attorney's failure to investigate key witnesses were sufficient reasons to overcome the presumption that his attorney had rendered effective assistance of counsel.

Generally, defense counsel is bound to conduct a prompt and thorough pretrial investigation of his or her case. *State v. Perez*, 99 Idaho 181, 579 P.2d 127 (1978). The course of that investigation will naturally be shaped by a variety of factors, many peculiar to the particular case. *Id.* Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law, but is essentially premised upon the circumstances surrounding the attorney's investigation. *See State v. Larkin, supra.*

Based upon our review of the record, we conclude that Davis' attorney rendered effective assistance of counsel in conducting his examination of Davis' case. Contrary to Davis' claim, his attorney was familiar with the law pertaining to the issues presented. This is evidenced by the attorney's pretrial memorandum which outlined the legal reasons for his defense of Davis; namely, that there was insufficient evidence to show that Davis had possession of the drugs at the time of his arrest, and that there was insufficient evidence to show that Davis had any intent to deliver the drugs.

Furthermore, we cannot say that Davis was prejudiced by his attorney's alleged failure to interview Ms. Davis prior to trial. A review of the post-conviction hearing transcript reveals the following. When asked about his contact with Mrs. Davis, the attorney testified that, although he had never formally "interviewed" her, he had spoken with her on several occasions regarding the events which transpired on or before the date of Davis' arrest. However, the attorney's testimony was contradicted by Ms. Davis at the hearing. She stated that she could not remember having any conversations with the attorney prior to Davis' trial. The district

court, sitting as the trier of fact at the post-conviction hearing, attempted to resolve the discrepancy in the testimony by finding that Davis' claim regarding his attorney's failure to interview Ms. Davis was "not supported by *any* evidence presented at the hearing." [Emphasis supplied.] In reaching his decision, it is unclear whether the trial judge ignored Ms. Davis' testimony or simply found the attorney's testimony more credible on this issue. If the trial judge ignored Ms. Davis' testimony, then he neither weighed it nor determined its credibility. In such instances, we would normally remand the case to the district court for more explicit findings concerning Ms. Davis' testimony. However, we need not do so here. Assuming, without deciding, that the attorney had failed to interview Ms. Davis prior to trial, we fail to see the resulting prejudice to Davis. It is undisputed that Ms. Davis was the informant who notified police that there were controlled substances at Davis' home. At trial, this fact was confirmed by one of the police officers who conducted the search of Davis' residence. Furthermore, Ms. Davis' testimony at trial focused on the uncontradicted events which took place at the time of Davis' arrest. This testimony contained nothing helpful to Davis' defense at trial. Neither does the record indicate that the attorney would have discovered any new or unique information which would have been useful in preparing his defense of Davis. In reaching our conclusion, we are unpersuaded by Davis' argument that his attorney's lack of preparation in this case prohibited him from conducting an effective cross-examination of Ms. Davis at trial. As we will examine later, the attorney's decision to limit cross-examination of Ms. Davis was based not on a lack of preparation, but upon the attorney's theory of defense, and upon his perceptions of what the witness might do under intense cross-examination. See Part D *infra*. Absent a showing of prejudice, we cannot find the attorney's counsel ineffective under the circumstances.

▉ We also conclude that the attorney's investigation of Terrel Carmichael was not deficient. Carmichael's testimony at trial could have been very helpful to Davis; Davis testified at the post-conviction hearing that Carmichael was prepared to state that it was he, Carmichael, and not Davis who had possession of the drugs and drug paraphernalia located at Davis' home.[2] However, Davis' attorney testified at the hearing that, after consulting with Carmichael and his attorney prior to trial, he decided not to call Carmichael as a witness because he was afraid Carmichael would give perjured testimony regarding ownership of the drugs. Specifically, the attorney was concerned that Carmichael's admission to owning the drugs would be contradictory to testimony that he, Carmichael, had given at his sentencing hearing on related charges. Davis' attorney was therefore concerned that Carmichael's testimony could be attacked as false and therefore would be detrimental to the defense of Davis. The attorney's testimony in this regard was unchallenged by Davis at the post-conviction hearing. Although Davis contends on appeal that his attorney's testimony at the hearing was contradictory to the attorney's testimony given in an earlier deposition, we conclude that there was sufficient evidence for the district court to find that the attorney had properly interviewed Carmichael prior to trial.

▉ Finally, we note that the evidence adduced at the post-conviction hearing indicates that Davis' attorney spent more than a cursory amount of time with Davis before trial. The attorney testified at the hearing that he talked to Davis on several occasions before trial. The attorney's testimony is substantiated by the actions he took in Davis' defense prior to trial, including his belated filing of the suppression motion, his drafting of a pretrial memorandum, and his attempt to have venue changed because of pretrial publicity in local newspapers.[3] Davis corroborated the

2. Carmichael pled guilty to charges of possession of marijuana, prior to Davis' trial.

3. Although venue for trial was not changed, the jurors were selected from among residents of a

attorney's statements by testifying at the hearing that he had met with the attorney on three or four occasions prior to trial.

In summary, we hold that Davis was not denied effective assistance of counsel with respect to his attorney's preparation for trial.

### C. Failure to Object to Prejudicial Evidence.

■ Davis' next allegation of ineffective assistance of counsel is based on the procedure used by the prosecutor to introduce exhibits during the trial. The exhibits consisted of items of personal property seized during the search of Davis' home and of Ms. Davis' automobile. The prosecutor used one of the officers who had conducted the search to lay the foundations for admission of the exhibits. As each exhibit was offered in evidence, Davis' counsel objected on various grounds. Ruling on the objections, the court admitted some, but not all, of the exhibits. However, all of the exhibits were displayed in the courtroom, in the presence of the jury, while the prosecutor presented the bases for admission.

Davis now contends that his attorney should have objected to the procedure used by the prosecutor. He submits that his attorney should have requested that the admissibility of the exhibits be determined outside the presence of the jury, so that nonadmissible items would not have been displayed to the jurors. He asserts that, as a result of his attorney's inaction, the jury was thus exposed to irrelevant, inadmissible, and therefore prejudicial evidence.[4]

Although, in practice, it may have been advantageous for Davis' attorney to ask the court to rule on the admissibility of all of the exhibits outside the presence of the jury, we see no deficiency in the attorney's conduct in this regard. Upon the offer of each of the exhibits now in question, the attorney raised a proper objection. In each instance, the objection was sustained and the exhibit was not admitted. The attorney's choice to object to the state's exhibits during trial was a tactical decision reserved to his discretion.

Furthermore, even if we assume that the attorney's performance regarding the exhibits was deficient, we are not persuaded that it resulted in prejudice to Davis sufficient to alter the outcome of his trial. *State v. Aragon, supra.* Although the jury was able to observe these exhibits while their admissibility was being resolved, the court neutralized any prejudice arguably flowing from that view by instructing the jury not to consider any offered evidence that was rejected by the court. *See United States v. Lawson,* 507 F.2d 433 (7th Cir.1974), *cert. denied, Lawson v. United States,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). In addition, once the inadmissible exhibits had been refused, they were apparently removed from the juror's view. *See State v. Thomas,* 47 Idaho 760, 278 P. 773 (1929) (jury's view of evidence ultimately found inadmissible not prejudicial). Taking into consideration all of the circumstances, including the other evidence used to convict Davis, we fail to see how the juror's view of these exhibits would have altered the outcome of Davis' trial. *Cf. State v. Douglass,* 35 Idaho 140, 208 P. 236 (1922) (purity of verdict affected by juror's examination of inadmissible evidence). Thus, we refuse to adopt any *per se* rule that such observation, followed by rejection of the exhibits and admonishment by the court, is prejudicial. *See United States v. Lawson, supra,* n. 3. However, we note that circumstances surrounding a jury's examination of inadmissable evidence could lead us, in a proper case, to conclude that the defendant has been prejudiced by such action. The circumstances do not yield that conclusion here. We therefore hold that the attorney's failure to object to the state's proce-

---

county other than where the charges against Davis arose. I.C. § 19–1816.

**4.** According to a list prepared by the trial's court reporter, the items not admitted in evidence included a "tally" book, a tin canister, "ziploc" and sandwich bags, a grow light, money order receipts, a road atlas, a notebook, a sack of "name-slips," three sacks of some "substance," a calculator and a plastic box.

dure in offering the exhibits at trial did not constitute ineffective assistance of counsel.

### D. Failure to Present a Defense.

■ We next address Davis' argument that, because his attorney did not call any witnesses in his defense, and because the attorney did not subject Ms. Davis to a rigorous cross-examination,[5] the attorney failed to subject the state's case to a meaningful adversarial testing. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Davis therefore contends that his attorney's conduct and the resulting prejudice during trial denied him effective assistance of counsel.

We find no deficiency in the attorney's defense of Davis. The testimony of both Davis and of his attorney during the post-conviction hearing, as well as our review of the trial record, indicates that Davis' defense was predicated upon weaknesses in the state's case with respect to Davis' possession of the illegal drugs and drug paraphernalia. The trial record illustrates numerous instances where Davis' attorney used this defense to test the sufficiency of the evidence seized during the search of Davis' home and Ms. Davis' automobile. Furthermore, the attorney testified at the hearing that he chose this defense because Davis did not wish to testify, because he felt Terrel Carmichael's testimony regarding possession of the drugs and drug paraphernalia could be shown to be false, and because he had no other witnesses or evidence which would be helpful to Davis' case. We have previously held that counsel's decision not to call witnesses as part of the accused's defense falls within the realm of trial tactics. *State v. Darbin,* 109 Idaho 516, 708 P.2d 921 (Ct.App.1985); *see State v. McKenney,* 101 Idaho 149, 609 P.2d 1140 (1980). The only exception to this rule relates to the right of the accused to testify in his own behalf. Although Davis stated at the post-conviction hearing that he did indeed wish to testify at his trial, the district court was convinced, by other evidence, that Davis had waived his

right to testify at the time of the trial. We see no reason not to accept the district court's decision in this regard.

Furthermore, we find no deficiency in the attorney's cross-examination of Ms. Davis. At the post-conviction hearing, Davis' attorney testified that he purposely limited his cross-examination of Ms. Davis at trial because Ms. Davis had been "emotional" throughout the proceedings, because he was unsure what she might say on cross-examination, and because Davis had requested that the attorney not "go hard" on her. Davis substantiated the attorney's testimony, stating at the hearing that he had asked the attorney "not to badger" Ms. Davis on the witness stand. We recognize that the scope of cross-examination is a decision within the province of the attorney's trial tactics. *State v. Perez, supra.* Here, we find no reason to suggest that the attorney's decision to limit Ms. Davis' cross-examination was based upon improper investigation, or insufficient preparation. We conclude that this decision was not an error on the attorney's part, but rather was a conscious choice—at Davis' suggestion—not to subject Ms. Davis to rigorous cross-examination. We therefore hold that the attorney's defense of Davis was competent, and did not constitute ineffective assistance of counsel.

### E. Failure to Object to the Court's Jury Instructions.

■ Davis next urges that his attorney was ineffective because the attorney did not object to the court's jury instructions. However, Davis fails to point out which, if any, of the court's instructions should have been objected to by his attorney. Although the record does not reflect whether the attorney made any objections to the court's instructions, it does reveal that the attorney submitted numerous instructions to the court, many of which were either adopted for use by the court or found to be covered under the jury instructions given. Our review of the jury's instructions, in toto, reveals no fatal defects. We see no reason

---

**5.** At trial, the attorney asked Ms. Davis only one question: whether she had been subpoenaed to appear before the court. Ms. Davis responded in the affirmative.

to suggest that Davis' attorney should have objected to instructions given by the court. *See State v. Rendon,* 107 Idaho 425, 690 P.2d 360 (Ct.App.1984) (counsel not required to make needless objections). We therefore hold that the attorney did not err in failing to object to the instructions given to the jury.

### F. Failure to Appeal.

Finally, Davis contends that his attorney rendered ineffective assistance of counsel by failing to file an appeal from Davis' judgment of conviction. Specifically, Davis asserts that his attorney unilaterally decided not to appeal even though Davis felt there were appealable issues. Davis also submits that his attorney failed to file a motion under I.C.R. 35 for a reduction of sentence, even though Davis' thirty-year sentence appeared severe given the facts and circumstances of this case. And last, Davis contends that he was prejudiced by his attorney's failure to notify him of the forty-two-day-time limit within which an appeal must be filed. I.A.R. 14(a).

We again disagree with Davis' contentions. Initially, we note that a defendant is entitled to appeal a judgment of conviction as a matter of right. I.A.R. 11(c)(1); I.C. § 19–2801. We also note that the American Bar Association has provided guidelines pertaining to a defense attorney's responsibilities to his client on appeal:

> After conviction, the lawyer should explain to the defendant the meaning and consequences of the court's judgment and defendant's right to appeal. The lawyer should give the defendant his or her professional judgment as to whether there are meritorious grounds for appeal and as to the probable results of an appeal. The lawyer should also explain to the defendant the advantages and disadvantages of an appeal. The decision whether to appeal must be the defendant's own choice.

AMERICAN BAR ASSOCIATION, *Standards for Criminal Justice: The Defense Function,* § 4–8.2 (1986 Supp.) (hereinafter *ABA Standards*). Ultimately, the decision to appeal rests solely with the accused. *Gardner v. State,* 91 Idaho 909, 435 P.2d 249 (1967). However, the defense attorney's responsibility to the accused includes, by necessity, a frank discussion of the merits of an appeal:

> Of greater importance is the duty of counsel to discuss frankly and objectively with the defendant the matters to be considered in deciding whether to appeal. Careful exploration should be made of the possible errors that could be pressed on appeal, their relative strengths and weaknesses, and the probable outcome of an appeal. Counsel should also attempt to learn and evaluate the doubts that the defendant may have about the adjudication of the case. To make the defendant's ultimate choice a meaningful one, counsel's evaluation of the case must be communicated in a comprehensible manner.

*ABA Standards, supra* § 4–8.2 (*see* Commentary at 106).

█ Our review of the record indicates that Davis' attorney fulfilled his obligation to notify Davis of his right to appeal. At the post-conviction hearing, the attorney testified that he and Davis discussed the merits and possible grounds for an appeal shortly after Davis' sentencing hearing. The context of that discussion was memorialized in a letter addressed to Davis shortly thereafter, in which the attorney reiterated his earlier decision that Davis' case presented "no appealable issues" for review. However, the letter further invited Davis to contact the attorney as to "what you [wish] me to do," presumably offering Davis the choice of whether or not to appeal. Davis failed to advise the attorney to file an appeal.[6] Through his actions, the attorney candidly informed Davis that he

---

6. At the post-conviction hearing, Davis testified that he did try to contact the attorney concerning an appeal. He testified that he placed a collect call by telephone to the attorney's office, but the office refused to accept the call. Davis also testified that he "believed" he mailed a letter to the attorney, requesting that an appeal be pursued. However, the attorney denied ever receiving such instructions from Davis. As noted in n. 1, *supra,* the district court found that Davis had failed to respond to the attorney's letter concerning an appeal.

believed the probability of a successful appeal was low. However, the attorney left the decision on whether to appeal directly in Davis' hands. Under the circumstances, we see no deficiency in the attorney's performance.

Furthermore, Davis argues that his attorney's actions were deficient because he failed to notify the court of his reasons for not appealing, as enunciated by the Supreme Court in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We are unpersuaded by this argument. *Anders* is applicable to situations in which an attorney wishes to discontinue representation of a client after an appeal has been commenced. Here, the attorney never stated that he wished to terminate his representation of Davis. Rather, his letter to Davis made it clear that he intended to continue his representation of Davis throughout the appeal process if Davis wished to appeal. Because Davis failed to exercise his right to appeal we fail to see how *Anders* is applicable in this case.

We are also unpersuaded by Davis' argument regarding his attorney's failure to file a motion under I.C.R. 35 for a reduction of sentence. The attorney testified at the post-conviction hearing that the judge who had sentenced Davis had a propensity not to grant motions for a reduction of sentence, and therefore such a motion likely would not be successful in Davis' case. The attorney communicated his opinion to Davis by the letter regarding an appeal, sent shortly after Davis' incarceration. As with the appeal discussion, the attorney's letter left the decision about a sentence reduction up to Davis. Davis failed to respond. Given Davis' failure to follow up on the letter, the attorney was justified in not filing the Rule 35 motion.[7]

Finally, we conclude that the attorney's failure to notify Davis of the time limit within which to file an appeal did not abridge Davis' right to appeal. As noted, the record shows that just after Davis' incarceration, his attorney wrote to him regarding the possibility of appeal.[8] The letter informed Davis that the attorney would await further instructions from the defendant as to whether he wished to appeal. Davis did not respond to his attorney's request. Assuming the letter reached Davis shortly after his incarceration, Davis would have had ample opportunity to contact his attorney regarding his desire to file an appeal. Failing to do so, he cannot now contend that his right to effective assistance of counsel was compromised by his attorney's failure to notify him of the time limit. In reaching our conclusion, we do not condone the fact that the attorney failed to notify Davis of the time limit in his letter. However, under the circumstances, we fail to see how Davis was prejudiced, because Davis did not respond at all. *See Strickland v. Washington, supra.*

We hold that Davis' right to appeal his judgment of conviction was not compromised by his attorney, and, consequently, Davis has failed to show he was deprived of effective assistance of counsel in that regard.

The order of the district court, denying relief to Davis on his petition for post-conviction relief, is affirmed.

BURNETT and SWANSTROM, JJ., concur.

---

7. The transcript of the post-conviction proceeding discloses that, through another attorney's efforts, Davis' sentence was in fact later reduced by the court to an indeterminate twenty-nine years upon application under I.C.R. 35.

8. According to Davis' testimony, in the meantime Davis had learned from other inmates there was a time limit of "40 to 45 days" for an appeal. There is no indication in the record, however, that the attorney was aware Davis had acquired this information.